IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASSIST SERVICES,

Plaintiff,

v.

PACIFIC SHORES, INC., and ELIZABETH KELLEY,

Defendants.

CV No. 05-819-AS

OPINION AND ORDER

ASHMANSKAS, Magistrate Judge:

Plaintiff Assist Services, Inc. ("Assist"), seeks damages from defendants Pacific Shores, Inc. ("Pacific"), and Elizabeth Kelley ("Kelley") (collectively "Defendants"), for injuries allegedly caused by Defendants. Before the court are Defendants' motion for summary judgment and two motions to strike. For the reasons that follow, Defendants' motions to strike (#41, #43) are GRANTED in part and DENIED in part, and Defendants' motion for summary judgment (#24) is GRANTED.

BACKGROUND

Assist provided transportation services to special needs students for Portland Public Schools Student Transportation Services ("PPS"). Pacific is an insurance broker that provided services to Assist. Kelley was a Pacific employee who worked on the Assist account.

In performing its contract with PPS, Assist used approximately eighteen drivers, who used their personal vehicles to transport PPS students. Assist's contract with PPS required it to carry $1,000,000 of liability insurance on all vehicles it used to transport PPS students. Pacific obtained automobile liability coverage for five Assist vehicles from National Interstate Insurance Co. ("National"), effective December 15, 2003, through December 15, 2004. Pacific also arranged financing for Assist's insurance premium from First Insurance Funding Corp. ("First").

In February 2004, a PPS student was involved in an accident while in an Assist vehicle. The vehicle was not one of the five listed in the policy, and there was no insurance coverage for the accident. This prompted PPS to examine Assist's insurance coverage more closely. In February 20004, Assist directed Pacific to obtain coverage for 13 additional vehicles, and Pacific did so. In June 2004, Assist directed Pacific to remove 13 vehicles from its policy, and Pacific did so.

National cancelled Assist's policy in July 2004. Both Assist and Pacific deny receiving notice of the cancellation. Assist alleges that it first learned of the policy cancellation during a September 3, 2004, meeting with PPS. PPS gave Assist until October 6, 2004, to obtain the required insurance coverage. Assist called Kelley, who allegedly confirmed the cancellation and assured Assist that Pacific would seek substitute coverage.

The parties dispute whether Assist directed Pacific to obtain coverage for all its vehicles, or only five vehicles. The parties dispute whether Pacific obtained any substitute coverage. PPS

terminated its contract with Assist in a letter dated October 20, 2004. The parties dispute whether or not PPS terminated the contract solely because Assist did not have insurance for all its vehicles by the October 6, 2004, deadline.

Assist filed a complaint in state court, claiming breach of contract, breach of fiduciary duty, and detrimental reliance. Assist seeks $1,485,015.72 in damages for loss of its PPS contract — $2,400,000 if loss of the PPS contract forces Assist into bankruptcy.

## DISCUSSION

## I. Motions to Strike

### A. Motion to Strike (#43):

Defendants move to strike (#43) paragraphs 23, 27, 30-35, and 39-54 of the Affidavit of Scott DeLong (#38). Paragraph 23 states:

> By September of 2004, Assist understood that it was owed monies back from National, not that its policy had been cancelled. Another Pacific employee, Judy Molnar, instructed Assist not to pay any more premiums, and when Assist inquired about the status of payments, Ms. Molnar informed Assist that she would fix the problem.

The first sentence of paragraph 23 is an admissible statement of the state of mind of Assist's president. The second sentence contradicts DeLong's deposition testimony that Ms. Molnar told him he would be alright if he kept making payments (Hiller Decl. Ex. 1 at 209:16-19), and lacks specific facts establishing DeLong's personal knowledge. The second sentence of paragraph 23 is stricken.

Paragraph 27 states: "Pacific Shores failed to restore coverage to Assist, which harmed Assist's relationship with PPS, and, when Pacific Shores was unable to procure replacement insurance in time, resulted in the loss of the PPS account." Defendants object that the paragraph

merely restates Assist's allegations, lacks a basis in personal knowledge, and contains speculation about PPS's motives. As president of Assist, DeLong is likely to have had personal knowledge of the facts stated up to the first occurrence of "PPS." See In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000) ("personal knowledge may be inferred from a declarant's position"). The court agrees with Defendants that DeLong lacks personal knowledge and is merely speculating about why PPS terminated the Assist contract. The court strikes the part of paragraph 27 beginning "and, when Pacific Shores . . . ."

Paragraphs 30 through 35 begin with: "At trial, I can present competent evidence that . . . ." The court agrees with Defendants that these paragraphs merely restate the pleadings, and lack the personal knowledge and factual specificity required by Rule 56(e). Assist offers no reasons, under Rule 56(f), for its failure to present, in admissible form, the evidence DeLong describes in these paragraphs. The court strikes paragraphs 30 through 35.

In paragraphs 39 and 49, DeLong-the-affiant asserts that, in September 2004, "I strongly disagree that Assist somehow cared only to insure five vehicles, since we had wanted to make sure all of our vehicles were covered in general," (¶ 39); and "[i]t is my understanding that defendants were to reinstate full coverage, not just for five vehicles," (¶ 49). These paragraphs flatly contradict the testimony of DeLong-the-deponent, who stated, no fewer than five times, that Assist *did* direct Pacific to obtain insurance on only five vehicles in September 2004. (Hiller Decl. Ex. 1 at 72:11-14; 126:16-18; 129:5-130:2; 212:2-23; 217:10-12.)

"Some inconsistencies between affidavits and depositions are so blatant that courts properly exclude affidavit testimony." Edward J. Brunet & Martin H. Redish, Summary Judgment: Federal Law and Practice § 8.9, 248-49 (3rd ed. 2006). "The general rule in the Ninth Circuit is that a party

cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted). The general rule is concerned "with sham testimony that flatly contradicts earlier testimony in an attempt to create an issue of fact and avoid summary judgment." Id. at 267 (quotations omitted). Contradictions which result from an honest discrepancy, mistake, or newly discovered evidence do not warrant a sham-testimony finding. Id. None of these exceptions to the general rule apply to these paragraphs, which flatly contradict DeLong's deposition testimony. The court strikes paragraphs 39 and 49.

Paragraphs 40 through 54 begin with either "It is my understanding," or "It is my belief." "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e). Though inartfully written and of questionable relevance, there are sufficient indicia that DeLong, as president of a small company, had personal knowledge of the subject-matter of paragraphs 40, 41, 44, 45, 46, 50, 52, 53, and 54. See In re Kaypro, 218 F.3d at 1075 ("personal knowledge may be inferred from a declarant's position").

Paragraphs 42 and 43 state DeLong's understanding that Assist relied on Pacific to insure its entire fleet of vehicles, and did not choose which particular vehicles were to be covered. This flatly contradicts his deposition testimony that he gave Pacific a schedule showing which vehicles to insure. (Hiller Decl. Ex. 1 at 71:12-21.) These paragraphs are a sham and are stricken.

Paragraph 47 flatly contradicts DeLong's deposition testimony that Ms. Molnar told him he would be all right if he kept making payments. (Hiller Decl. Ex. 1 at 209:16-19.) The court strikes paragraph 47.

Paragraphs 48 and 51 begin "It is my belief . . . ." Paragraph 55 admits that these are based

on DeLong's belief, not his personal knowledge. Both paragraph 55 and the content of paragraphs 48 and 51 demonstrate that DeLong's testimony is not based on personal knowledge. The court strikes paragraphs 48 and 51.

The court strikes the second sentence of paragraph 23, paragraph 27 beginning with "and," and paragraphs 30 through 35, 39, 42, 43, 47 through 49, and 51. Defendants' motion (#43) to strike the DeLong Affidavit (#38) is GRANTED in part and DENIED in part.

**B. Motion to Strike (#41):**

Defendants move to strike (#41) Assist's response (#36) to their Concise Statement of Material Facts, because the response fails to specify which paragraphs in the DeLong affidavit it relies on, as required by LR 56.1(c); and because paragraphs 40 through 54 are inadmissible. To deny a material fact, LR 56.1(c) requires a party to "cite to a particular affidavit, deposition, or other document (indicating both page and line number references where appropriate) . . . ." Assist cited a particular affidavit, that of Scott DeLong, as required by LR 56.1(c). It would not have been inappropriate for Assist to reference the specific paragraphs in the DeLong affidavit, on which its denials relied. However, the local rule does not expressly require paragraph references, and the appropriate references are apparent. Defendants' first reason does not justify striking Assist's response.

However, several of Assist's responses are supported only by paragraphs in the DeLong affidavit that the court has now stricken. Therefore Defendants' motion (#41) is GRANTED as to Assist's responses to Defendants' Facts "2 (misnumbered)," 3, 8-11, 12 and 13. The motion is DENIED as to Assist's other responses, which find some support in the DeLong affidavit's admissible paragraphs.

## II. Summary Judgment (#24).

Assist seeks damages for the loss of its contract with PPS. Assist claims breach of contract, breach of fiduciary duty, and detrimental reliance. Defendants' summary judgment motion focuses on two facts that, taken together, preclude the award of such damages under any of Assist's theories: (a) in September 2004, Assist directed Pacific to obtain insurance on only five Assist vehicles; and (b) PPS terminated its contract with Assist solely because of Assist's failure to insure all eighteen of its vehicles. Assist asserts that there are genuine issues as to both of those facts; and that, (c) even if those facts are true, Pacific had a duty to advise Assist that it would lose the PPS contract unless it insured all eighteen vehicles.

### Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment: (1) all reasonable doubts as to the existence of genuine issues of material fact are to be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

**A. Assist requested insurance on only five vehicles:**

Defendants' motions for summary judgment are supported by substantial evidence that, in September and October of 2004, Assist directed Pacific to obtain automobile liability insurance on only five vehicles. First, Assist president Scott DeLong repeatedly and unambiguously admitted this fact in deposition testimony on September 11, 2006, and November 10, 2006. (Hiller Decl. Ex. 1 at 72:11-14; 126:16-18; 129:5 to 130:2; 212:2-23; 217:10-12.) The following deposition testimony is exemplary:

> Q. There's no question that . . . you had asked Pacific Shores to get – in September of 2004, to get a policy covering just five vehicles?
>
> A. Yes, I asked them.
>
> Q. Okay, and not a policy covering 18 or 19 vehicles?
>
> A. No.
> (Hiller Decl. Ex. 1 at 212:17-23.)

Second, Judy Molnar, Pacific's account executive for the Assist account, confirmed DeLong's deposition testimony: "[In September 2004,] Mr. DeLong asked that we get coverage elsewhere, again on only the five vehicles . . . ." (Molnar Decl. ¶ 9.) Assist argues that the Molnar declaration is self-serving and highlights, rather than resolves, this factual dispute. (Resp. 4.) However, there is no justification for rejecting a self-interested declarant's unrebutted testimony, when it is based on personal knowledge and specific facts. Edward J. Brunet & Martin H. Redish, Summary Judgment: Federal Law and Practice § 8.9, 248-49 (3rd ed. 2006). In rebuttal, Assist offers only the DeLong affidavit and exhibits two through fourteen to the Duckler Affidavit. (Resp. 4.) However, the relevant paragraphs of DeLong's affidavit (39, 42, 43, and 49) are stricken. Nor do the exhibits

to the Duckler Affidavit help Assist. Except exhibits 11 and 14, both of which tend to support Molnar's account, each exhibit is silent on the subject.

Finally, the context of Pacific's September 2004 search for substitute insurance supports the account given, in deposition, by Mr. DeLong and by Ms. Molnar. In December 2003, the start of the insurance policy year, Assist sought, and Pacific arranged, insurance on five vehicles. (Hiller Decl. Ex. 1 at 155:18-22, Ex. 3, 4; Molnar Decl. ¶ 4.) In February 2004, an uninsured Assist vehicle carrying a PPS student was involved in an accident. (Winchester Decl. ¶ 6; Hiller Decl. Ex. 1 at 75:14-24.) Assist responded by adding thirteen vehicles to its policy. (DeLong Aff. ¶ 13; Hiller Decl. Ex. 1 at 79:25-80:6, 211:20-24, Ex. 5, 6, 10; Molnar Decl. ¶ 5.) In June 2004, Assist directed Pacific to remove the thirteen vehicles that had been added in February. (DeLong Aff. ¶ 16; Hiller Decl. Ex. 1 at , Ex. 16, 17, 19; Molnar Decl. ¶ 6.)

DeLong himself placed Assist's September 2004 decision to insure only five vehicles in context: "[Each September, Assist] always start[ed] out with five to get a fleet discount. . . . And generally within the industry . . . they start with five to get the price in the premium and then they go from there." (Hiller Decl. Ex. 1 at 212:9-16.)

Paragraphs 39, 42, 43, and 49 of the DeLong affidavit having been stricken, Assist offers no admissible evidence to create a genuine issue of fact. The court finds that, in September 2004, Assist directed Pacific to obtain automobile liability insurance on only five Assist vehicles.

**B. PPS terminated the Assist contract because it insured only five vehicles:**

At all relevant times, Bryan Winchester was the director of student transportation services at PPS. (Winchester Decl. ¶¶ 1, 9-11.) Winchester made the decision to terminate PPS's relationship with Assist. Id. at ¶¶ 9-11. On behalf of PPS, Winchester terminated the Assist contract

because, "in September/October 2004, Assist Services had $1,000,000 insurance coverage on only five or six vehicles, and not on all of the 18 or so vehicles that Assist Services was using to transport PPS students in that September/October 2004 time frame, and this did not comply with the PPS insurance requirements." Id. at ¶ 11.

Winchester's declaration is supported by the October 20, 2004, letter from PPS, signed by Winchester, informing Assist that:

> On October 6, 2004, I directed my staff to remove all work associated with Assist Services based upon inadequate coverage of automobile liability. Specifically, your automobile liability covers only six vehicles. Your billing for September and October indicates you were using at least 18 vehicles.
>
> Therefore, in light of the problems and reasons stated above, we, Portland Public Schools, will not [sic] longer utilize your services to transport our students.
>
> Should you obtain the proper insurance coverage for your company and all vehicles, we will consider utilizing your services again.

(Hiller Decl. Ex. 24.) Despite having deposed Mr. Winchester, as indicated by Defendants' counsel at oral argument on May 7, 2007, Assist offers no admissible evidence that PPS terminated the Assist contract for any other reason. The statement in DeLong's affidavit (¶ 51) of his "belief that PPS had different reasons than those stated in Mr. Winchester's declaration," has been stricken.

The court finds that PPS terminated its contract with Assist solely because Assist insured only five of its eighteen vehicles.

**C. Pacific had no duty to advise:**

At oral argument on May 7, 2007, Assist argued that — even if PPS terminated the Assist contract solely because Assist insured only five vehicles — Pacific had a duty to advise Assist that it would lose the PPS contract if it failed to insure all of its vehicles.

**Legal Standard**

A duty of care arises when a "special relationship" exists. Bennett v. Farmers Ins. Co., 332 Or. 138, 160 (2001). For example, an independent agent or broker "owes a duty to [the insured] to exercise reasonable skill and care to obtain the insurance coverage ordered . . . ." Lewis-Williamson v. Grange Mutual Ins. Co., 179 Or. App. 491, 494 (2002). A special relationship also exists where one "party is acting, at least in part, to further the economic interests of the other by virtue of the other's relinquishment of control of the situation and consequent right to rely on the first party to achieve the desired outcome or resolution." Id. at 496.

**Discussion**

Assist argues that summary judgment in this case is inappropriate under Caddy v. Smith. (Pl. Mem. 6 (citing 129 Or. App. 62 (1994).) Plaintiff Caddy was a homeowner serving as his own general contractor. Id. at 64. Caddy told the defendant, his insurance agent, that: (a) he wanted insurance to cover "any liability" for those "working on the job" at his house, (b) he did not know if he was the contractor, (c) he was paying the bills, (d) "[t]here are a lot of people out there. I really don't know who's insured and who is not." Id. The insurance agent said, "Okay, I'll take care of it for you." Id. at 65. The agent obtained a standard homeowners policy that excluded workers' compensation coverage. Later, a worker was injured, and the Workers' Compensation Board held that Caddy was responsible to pay for his injuries. Id. (citing Caddy v. SAIF, 110 Or. App. 353 (1991)). Caddy first held that there was a jury question whether "plaintiffs provided sufficient information to defendant to give rise to a duty to procure workers' compensation insurance." Id. at 66. Because that was a jury question, the court held that there was also a jury question whether the broker had a duty to explain to Caddy that the insurance policy did not include workers'

compensation. Id. at 67.

The court finds that, in September 2004, Pacific obtained $1,000,000 in insurance coverage for five Assist vehicles. (Molnar Decl. ¶ 11; Hiller Decl. Ex. 22, 23; Winchester Decl. ¶ 8.) In contrast to Caddy, that is the exact coverage Assist directed Pacific to obtain. (Hiller Decl. Ex. 1 at 72:11-14; 126:16-18; 129:5-130:2; 212:2-23; 217:10-12; Molnar Decl. ¶ 9.) Caddy does not support Assist's assertion that Pacific had a duty to advise it to insure all eighteen vehicles.

Nor does the evidence support finding a "special relationship" between Assist and Pacific. A special relationship exists where one "party is acting, at least in part, to further the economic interests of the other by virtue of the other's relinquishment of control of the situation and consequent right to rely on the first party to achieve the desired outcome or resolution." Lewis-Williamson, 179 Or. App. at 496. Assist did not relinquish control over its automobile liability insurance to Pacific. The DeLong deposition testimony and other evidence make clear that Assist directed Pacific: (a) to insure five specific vehicles in December 2003 (Hiller Decl. Ex. 1 at 155:18-22, Ex. 3, 4; Molnar Decl. ¶ 4); (b) to add thirteen specific vehicles in February 2004 (Hiller Decl. Ex. 1 at 79:25 to 80:6); and (c) to delete thirteen specific vehicles in June 2004 (Hiller Decl. Ex. 17). Mr. DeLong then met with PPS and discussed the insurance Assist had to obtain. (Hiller Decl. Ex. 1 at 207:9-15; Ex. 24). Assist then directed Pacific to insure five specific vehicles. (Hiller Decl. Ex. 1 at 72:11-14; 126:16-18; 129:5-130:2; 212:2-23; 217:10-12; Molnar Decl. ¶ 9.) The court finds that Assist did not relinquish control over the decision of how many vehicles, and which vehicles, it would insure.

## III. CONCLUSION

Defendants' motions to strike (#41 and #43) are GRANTED in part and DENIED in part.

Defendants' motion for summary judgment (#24) is GRANTED.

DATED this 14th day of May, 2007.

/s/Donald C. Ashmanskas
DONALD C. ASHMANSKAS
United States Magistrate Judge